## Swift & Co. v. Hafleigh & Co., Appellant.

*Contract—Agreement to take entire production—Estimate—Construction of contract—Affidavit of defense—Words and phrases.*

Where a person agrees to purchase from a meat packing company its "entire 1914 production rejected manufacturing bones ......production estimated to be 15 to 20 tons per month," and the purchaser accepts and pays for 220 tons during eleven months of the year, he cannot refuse to accept 65 tons shipped to him in the last month. The word "estimated" does not fix a maximum of 20 tons per month.

In an action to recover the loss on goods which a purchaser refused to take, a positive averment of sale in the open market in the plaintiff's statement of claim is not denied by an averment that the defendant did not know the market price. In such a case if the plaintiff did not sell in the most advantageous market, such fact should be averred in the affidavit of defense.

Argued Dec. 12, 1916. Appeal, No. 318, Oct. T., 1916, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Sept. T., 1915, No. 1493, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Swift & Co. v. Hafleigh & Co. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit for breach of contract to purchase bones.

From the record it appeared that the plaintiff by writing sold to defendant "Our entire 1914 production rejected manufacturing bones at fifty-seven dollars and fifty cents ($57.50) per ton of 2,000 lbs., loose, C. A. F. Philadelphia, Pa........Production estimated to be fifteen to twenty tons per month." The plaintiff's statement averred, inter alia, as follows:

2. The defendant accepted and paid for all of the plaintiff's 1914 production of rejected manufacturing bones, with the exception of sixty-five tons, which it refused to accept.

3. The plaintiff, after notifying the defendant that it would sell the sixty-five tons in the open market and hold the defendant responsible for any loss, did so sell them at a loss of $553.50. A memorandum is hereto attached and marked "Exhibit B," explaining this loss in detail.

The averments of the affidavit of defense were inter alia, as follows:

2. The defendant denies all the averments of facts set forth in paragraph 2 of the plaintiff's statement of claim, but on the contrary, avers that the plaintiff's production from the period beginning January 1, 1914, and ending December 31, 1914, of rejected manufacturing bones was 285 tons, and of that amount the said defendant paid for and received 220 tons. The defendant admits that it refused to accept the 65 tons mentioned in said paragraph 2 because and by reason of the fact that it was no wise obliged, obligated, or liable to receive more than an additional 20 tons during the period mentioned. That the said plaintiff though due demand was made upon it by the said defendant prior to the 31st of December, A. D., 1914, in writing refused and neglected to deliver to the plaintiff the remaining 20 tons by reason of which breach the said plaintiff ought not to be suffered or permitted to maintain this suit.

3. The defendant denies all the averments of fact set forth in paragraph 3 of the plaintiff's statement of claims, and avers that the deponent or the said defendant has no knowledge of the market price alleged to have been obtained by the said plaintiff for the 65 tons mentioned in said paragraph 3 nor any alleged loss consequent thereto, and demands that if the plaintiff deem the same material due and legal proof thereof be given upon the trial of this cause. The said defendant admits the notice of an intended sale in the open market by the plaintiff as is averred in said paragraph 3.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

506   SWIFT & CO. *v.* HAFLEIGH & CO., Appellant.

Assignment of Error—Opinion of the Court. [66 Pa. Superior Ct.

*Error assigned* was the order of the court.

*Jacob Weinstein,* with him *Joseph Moss,* for appellant.—An ambiguous contract shall be construed by the acts of the parties thereto in the performance thereof: Thatcher v. West Chester St. Railway Co., 35 Pa. Superior Ct. 615; Pittsburgh Coal Co. v. Cook, 219 Pa. 539; Bower v. Walker, 220 Pa. 294; McKeever v. Westmoreland Coal Co., 219 Pa. 234.

*Howard Lewis Fussell,* with him *Staake & Patton,* for appellee.—It would be contrary to all accepted usage of English to hold that the sale of an entire thing is to be limited by an estimate: Gwillim v. Daniell, 2 Cr. Mess. & Ros. Ex. 61.

OPINION BY KEPHART, J., March 16, 1917:

Plaintiff sold to the defendant its "entire 1914 production rejected manufacturing bones." Defendant received and paid for two hundred and twenty tons during eleven months of the contract. On the last month sixty-five tons were shipped, which defendant refused for the reason that the contract of sale contained a clause which limited the quantity of the rejected manufacturing bones it was required to take. This clause read: "Production estimated to be fifteen to twenty tons per month." Defendant claims the maximum that it could be held for was twenty tons per month, and it was not compelled to take any beyond that amount. The bones refused were sold by the plaintiff in the open market and a loss was sustained of $553.50. Our inquiry is directed to the meaning and effect of this clause. Webster's dictionary defines "estimate" as "an approximate judgment or opinion as to weight, magnitude, cost and the like; a calculation without measuring or weighing." Similar definitions are given by other lexicographers. "As a verb, to judge and form an opinion of the value, from im-

perfect data; to fix the worth of roughly, or in a general way; to form an opinion of, as to amount, number, etc., ......to make an estimate of; to calculate roughly": 16 Cyc. 670.

No doubt the sense in which the word is used and the idea intended to be expressed by its use may be determined from the instrument, and such meaning may be different from the accepted meaning of the word. There is nothing in this contract to vary its ordinary meaning. The contract was to purchase all the rejected manufacturing bones. The subsequent provision in no way limited that contract. It was merely instructive as to the probable purchase and output, which might be more or less than the quantity mentioned. To hold that it fixes the maximum quantity would be to give to the words the effect of an actual computation instead of an approximate calculation.

If the plaintiff did not sell in the most advantageous market, the defendant should have so stated in its affidavit, and a positive statement of sale in the open market is not denied by an averment that the defendant does not know the market price.

The judgment is affirmed.